TRETHEWAY, Respondent, v. TRI-STATE MILLING CO.

(222 N. W. 950.)

(File No. 6640. Opinion filed January 5, 1929.)

*L. M. Simons,* of Belle Fourche, and *Chambers Kellar,* of Lead, for Appellant.

*C. P. Seward* and *Dan McCutchen,* both of Belle Fourche, for Respondent.

BROWN, J. Tri-State Milling Company of Belle Fourche is a corporation of which practically the entire stock and management is, and at all times since its organization has been, in the hands of the Quarnberg family. It operates a mill at Belle Fourche and one at Sturgis. For some time prior to November, 1925, the company had been engaged in the construction of a hydro-electric power project for power to operate the Belle Fourche mill, and other purposes. The power plant was located some five miles from the mill, and after the construction of the necessary canals and installation of machinery, it was necessary to construct a transmission line and connect up the power with the mill.

Plaintiff, who at one time lived in Rapid City, but had moved to Seattle, had returned to Rapid City about the middle of September, and in October he applied to the Tri-State Milling Company for work on this hydro-electric power project. At that time the only employment he had found in Rapid City was through a service club which he was working up, in which he agreed to do repair work for the members for a specified rate per month, the amount charged running from 60 cents up as high as $6, according to the character of the work likely to be required by the club members, and at the time he entered into the contract which is made the basis of this action, his aggregate earnings were running about $60 a month. The company employed him by the day at an agreed compensation of $8 a day, to prepare plans and estimates and other office work as to the construction of the transmission line, and

plaintiff was paid in full for all of this work. On November 2, 1925, the oral contract was entered into, out of which this action arises. In his complaint plaintiff alleges that by the terms of this contract defendant agreed to employ him for a period of one year from November 1, 1925, first, to install the necessary machinery and equipment for the purpose of putting into operation the hydro-electric plant to supply power for the operation of the mill at Belle Fourche, and, second, to have charge of the power plant and electric devices and operate the same during the balance of the year, for which his compensation was to be $200 a month while the construction work was in progress and $150 a month for the balance of the year, and in addition that defendant was to furnish plaintiff a dwelling house to live in, with water, lights, and fuel. Plaintiff further alleges that to induce him to enter into the contract of employment, defendant represented that it had a program and intended to do a large amount of electrical work, including the building of a new flour mill and installation of a ventilating and electrical trucking system, the construction of power lines from the plant to Sturgis and Newell, and that all of these representations were made falsely and fraudulently for the purpose of inducing plaintiff to leave his business in Rapid City and to take employment from defendant; that after he had worked eight months he was wrongfully discharged by defendant, and he brings this action to recover wages for four months under the contract at $200 a month, and also demands additional damages for the breach of contract in the sum of $1,500.

The answer admits the employment of plaintiff under an agreement to pay him $200 a month during the time necessary for the construction of the power line, and $150 a month while he was employed thereafter; that plaintiff was paid in full for all of his services; and that there was no definite term of employment agreed upon, but that plaintiff was employed only by the month.

The jury found a verdict for plaintiff, fixing his damages at $680, and from a judgment on the verdict, and an order denying a new trial, defendant appeals.

Errors are assigned on the admission and exclusion of evidence and on the refusal of the court to give instructions requested by defendant, but the principal ground urged for reversal is that the evidence is insufficient to justify the verdict.

 Plaintiff alone testified about his contract of employment being for a year, and in this he is flatly contradicted by Hans Quarnberg and his two sons, Carl and Paul. The verdict of the jury has resolved this conflict of testimony in favor of plaintiff; but, rejecting the testimony of the Quarnbergs entirely, there are inherent conflicts in plaintiff's own evidence and indefiniteness in his testimony with reference to the period of employment, which we think requires that the cause be remanded for a new trial.

Prior to November 2, plaintiff had several interviews with Hans or Carl Quarnberg, or both, the result of which plaintiff himself states was that he was told they were not ready to give him any employment, because their work on that project had been halted completely by the severe winter weather of the two preceding winters that they had worked on it. On November 2, however, they had finally decided to try going on with the work, and plaintiff's testimony as to the contract made on that date for his employment is substantially as follows, so far as relates to the term of employment: "I told Carl Quarnberg that I could not afford to come in there for two or three months work. I had better stay in Rapid City; that a proposition of that kind ought to be good for at least a year; and at the end of that time if any changes were to be made or any new work has come up you want to move me up on, it would make no difference, what I get could be discussed at that time and the necessary adjustment made, whether wanted to raise my salary or something of that kind, but of course I couldn't expect anything of that kind during the life of the contract, that was the idea I intended to convey. He said that was satisfactory to him, but he would have to submit it to Dad Quarnberg for approval." He says that later the same day they saw the father, Hans Quarnberg, and Carl said to him that plaintiff had made the proposition "that he would come here and handle this job for us, with the understanding that he was to get $200 a month for November and December and $150 a month after January 1st, including a house, heat, lights and water, the house out to the power plant. And he would stay here with those arrangements for at least a year, and Mr. Quarnberg said that was perfectly all right. And that was the last negotiation that closed up the deal, so far as I was concerned."

It is conceded by plaintiff that Hans Quarnberg alone had

authority to employ him, and that the contract was made between plaintiff and Hans Quarnberg, representing defendant. It will also be observed that there is nothing in the statement of the terms of employment, as herein related by plaintiff himself, that warrants the inference that defendant was agreeing to employ him for a year. The statement made to Hans Quarnberg was that plaintiff offered to work for defendant for $200 a month during November and December and $150 a month, including house, heat, lights, and water, after January 1st, and that plaintiff would stay with those arrangements for at least a year. It seems to us that Hans Quarnberg's assent to this was not any agreement to employ plaintiff for a year, but to employ him by the month for $200 a month for November and December and $150 a month thereafter, with house, heat, lights, and water, he agreeing to stay for at least a year on those terms.

To corroborate his contention that defendant had agreed to employ him for a year, plaintiff, over the objection of defendant, was permitted to introduce evidence of conversations had with the Quarnbergs, Carl and Hans, in which the Quarnbergs stated in substance that probably they would build a new line to Sturgis, that they could not just exactly tell, but it showed pretty favorably for a new line to operate the mill at Sturgis. To counteract this testimony defendant offered in evidence a written report made by plaintiff to defendant as a summary of the work he had done for defendant while working by the day in October, in which report he presented alternative plans, depending on the amount of power which defendant might require for its contemplated enterprise. This report contained the following paragraph: "If it is at all possible that you will have use for the full 250 hp. at Belle Fourche in the near future it seems to me, and is my opinion that the most economical and all around efficient system would be the three phase transformer as shown on sheet No. 5. *On the other hand,* where your demands above 100 hp. at Belle Fourche are so indefinite, and you cannot see where you are going to need any additional power for some time, the single phase system is suggested as shown on sheet No. 4. Here you will note that two combinations are possible, transmitting all of the power at a slightly increased cost or transmitting enough for your present needs at a less cost than with the three phase system."

■ If it was proper to admit, in support of plaintiff's contention that his employment was for a year, the testimony of witnesses, that in conversation with the Quarnbergs they had stated that possibly or probably they would extend the power lines, it was clearly error to exclude plaintiff's own written report showing that defendant had assured him that they would have no need for some time for any additional power over that needed for the operation of the Belle Fourche mill.

■ Defendant requested an instruction that, under the law of this state, where an employee is paid wages monthly, a presumption arises that the term of employment is also by the month, and the burden of proof is upon plaintiff to overcome this presumption by a preponderance of the evidence. This was refused, but in the instructions given by the court the statutory provisions on the subject were read to the jury, to the effect that a servant is presumed to have been hired for such length of time as the parties adopt for their estimation of wages, that a hiring at a yearly rate is presumed to be for a year and at a daily rate for a day, and that in the absence of an agreement or custom as to the rate or value of wages, the term of service, or the time of payment, a servant is presumed to be hired by the month at a monthly rate of reasonable wages for the services performed, and stated to the jury that in the absence of a special agreement to the contrary, where a person receives his wages each month, the term of hiring would be considered as one from month to month, but the fact that the wages were paid monthly would not change a yearly contract into a monthly contract if it was in fact a yearly contract, and that the burden of proof was upon plaintiff to establish that there was a yearly contract. We think the charge of the court sufficiently covered the requested charge which was refused.

The court also charged the jury in substance that, if there was a yearly contract, the measure of damages would be the contract price less any sums that the plaintiff might with reasonable diligence have earned at the same general employment in the same general vicinity during the unexpired term. The unexpired term was four months, which at $150 would be $600. Plaintiff further testified that his heat, light, and water for these four months would be $25 a month, and the undisputed evidence places the rental value of the house which he was to occupy at not exceeding $12 a month.

His total damage for the four months could therefore not exceed $748, and he testified that he earned about one-fourth of what he would have been entitled to under the contract, or $187; deducted from $748, this would leave $561 as the maximum amount of damages he could have sustained, according to his own testimony. The jury's verdict was for $680.

The judgment is reversed, and the cause remanded for a new trial.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.